BANK OF DEARBORN *v*. STATE BANKING COMMISSIONER.

1. BANKS AND BANKING—BRANCHES—CONSTRUCTION OF WORD VILLAGE.

   The word *village*, as used in provision of statute prohibiting the establishment of a branch bank "in a city or village in which a State or National bank or branch thereof is then in operation" is not a technical word, or one having a peculiar meaning, but is a common word in general usage with ancient lineage, being merely an assemblage or community of people, a nucleus or cluster for residential or business purposes, a collective body of inhabitants gathered together in one group, akin to *vicinity, neighborhood,* or *community* (CL 1948, § 487.34).

2. SAME—BRANCHES—CONSTRUCTION OF WORD VILLAGE.

   The term *village* in statute barring establishment of a branch bank "in a city or village in which a State or National bank or branch thereof is then in operation" refers to a settlement, a centralized populous area having a general common residential and business activity serving a particular area or district and

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 37 Am Jur, Municipal Corporations § 5.
[3] 3 Am Jur, Appeal and Error § 821.
[4] 42 Am Jur, Public Administrative Law §§ 138, 149.
[5] 42 Am Jur, Public Administrative Law §§ 240, 241.
[8] 42 Am Jur, Public Administrative Law § 116.

does not have to be a separate political entity or corporation, a trading area, being distinct. from that assigned to *municipality* (CL 1948, § 487.34).

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE—CROSS APPEAL—CHANCERY REVIEW OF STATE BANKING COMMISSIONER'S APPROVAL OF BRANCH BANK.

Question of whether or not plaintiff, owner of branch bank in a township area, seeking to restrain defendant State banking commissioner from granting approval to defendant bank to establish a branch 1.1 miles distant from plaintiff's established branch, is entitled to chancery review of the commissioner authorization is not discussed, where defendants have not cross-appealed from trial court's determination that plaintiff was entitled to such review but denied relief in this case (CL 1948, § 487.21).

4. BANKS AND BANKING—BRANCHES—APPROVAL OF COMMISSIONER.

The matter of approval of the establishment of a branch bank is not required to be an adversary proceeding before the State banking commissioner and the pertinent statute does not require the taking of proofs, presence of parties, or the making of written finding of facts by him, hence, the failure of the commissioner to make any express findings of fact did not render his determination invalid (CL 1948, §§ 487.21, 487.34).

5. SAME—BRANCHES—APPROVAL—BURDEN OF PROOF.

The burden of proving the State banking commissioner's action in approving the establishment of a branch bank to be unlawful or unreasonable rests on plaintiff asserting it in circuit court, where statute provides for review, and where the procedure before him has been pursuant to statute and the record made in circuit court on review does not disclose error requiring reversal, his action will not be disturbed on appeal to the Supreme Court (CL 1948, § 487.21).

6. SAME—BRANCHES—APPROVAL—CIRCUIT COURT REVIEW—EVIDENCE—SAVINGS AND LOAN ASSOCIATIONS.

Exclusion of testimony in circuit court on review of defendant State banking commissioner's approval of defendant bank's establishment of a branch 1.1 miles distant from plaintiff's branch, both locations being in township territory, the testimony being relative to presence of savings and loan associations, was not error in view of the fact that such associations do not function in the same field or render a service comparable to that of commercial banks (CL 1948, § 487.21).

7. SAME—BRANCHES—APPROVAL—BURDEN OF PROOF—EVIDENCE.

Finding of circuit court that plaintiff, owner of branch bank located 1.1 miles from place where defendant bank proposed to establish a branch in same township, had failed to sustain its burden of proof of the lack of sufficient capital and surplus of defendant bank, or lack of necessity for the new branch, or that the site for the new branch was in a separate village *held,* supported by record presented.

8. SAME—BRANCHES—APPROVAL—CIRCUIT COURT REVIEW—DUE PROCESS.

Due process requirements of the Constitution were met, where reasonableness and lawfulness of State banking commissioner's approval of the establishment of a branch bank is determinable in a circuit court review of such action, although the approval be obtained in *ex parte* proceedings before the commissioner, as due process does not extend to a right to be free from competition (US Const, Am 14; CL 1948, §§ 487.21, 487.34).

Appeal from Wayne; Piggins (Edward S.), J. Submitted October 13, 1961.   (Docket No. 76, Calendar No. 48,914.)   Decided March 16, 1962.

Bill by Bank of Dearborn, a Michigan banking corporation, against Herman G. Taylor, deputy and acting commissioner, and now commissioner of banking, and The Michigan Bank, a Michigan banking corporation, to enjoin issuance of certificate of authority permitting establishment of branch bank, to vacate previously granted approval, and to enjoin bank from establishing branch banking office.   Bill dismissed.   Plaintiff appeals.   Affirmed.

*Jesse W. Bollinger* and *Irwin I. Cohn* (*Avern Cohn* and *John Sklar,* of counsel), for plaintiff.

*Paul L. Adams,* Attorney General, *Joseph B. Bilitzke,* Solicitor General, and *Maurice M. Moule,* Assistant Attorney General, for defendant banking commissioner.

*Langs, Molyneaux & Armstrong (John F. Langs,
Richard F. Molyneaux, and Richard J. Langs, of
counsel), for defendant bank.*

. Carr, J. Defendant The Michigan Bank was orig-
inally chartered and has its principal office in De-
troit. It has no branch or business in adjacent
Dearborn township. This is an action to enjoin
issuance by defendant banking commissioner of a
certificate of approval for and establishment by de-
fendant bank of a branch at the northwest corner of
Ford road and Mayburn, one block west of Telegraph
road, in north Dearborn township, Wayne county,
Michigan. From decree for defendants, dismissing
plaintiff's bill of complaint on the merits, plaintiff
appeals.

Plaintiff is a State bank with its principal office
and 3 branches in the city of Dearborn, and one
branch in north Dearborn township, west of Dear-
born city, at the southeast corner of Ford road and
Beech Daly road. Ford road is the north boundary
of the city of Dearborn. Plaintiff's township branch
on Ford road is approximately 1.1 miles west of the
intersection of Ford road and Mayburn at which
defendant bank seeks to establish a branch. Plain-
tiff, in its brief, says of the intervening township
area, north of Ford road, that it is "homogeneous
and well built up." Plaintiff therefore invokes the
provisions of CL 1948, § 487.34 (Stat Ann 1957 Rev
§ 23.762), permitting a bank to establish and oper-
ate a branch "within a village or city other than that
in which it was originally chartered * * * *Provided,*
further, That no such branch shall be established in
a city or village in which a State or National bank
or branch thereof is then in operation." Reference
then is made to our holding in *Wyandotte Savings
Bank* v. *State Banking Commissioner,* 347 Mich 33,
that, for purposes of this statute, the word "village"

includes an unincorporated as well as incorporated village.

It is plaintiff's contention that the locations of its township branch and that of defendant bank's projected branch, in north Dearborn township, are both within 1 unincorporated village and that, its branch already being in operation therein, defendant bank may not, under the above statutory provision, establish another there.

The trial court held that the 2 branch bank locations are in separate unincorporated villages. In so holding, the trial court said:

"For the purpose of the banking law this question has been fully and carefully discussed and answered by our Supreme Court in *Wyandotte Savings Bank* v. *State Banking Commissioner* (*supra*, 41). 'The word "village" is not a technical word, or one having a peculiar meaning, but is a common word in general usage with an ancient lineage. It is merely an assemblage or community of people, a nucleus or cluster for residential and business purposes, a collective body of inhabitants gathered together in one group.' The supreme court of Pennsylvania calls it 'community.' *Upper Darby National Bank* v. *Meyers* (1956), 386 Pa 12 (124 A2d 116). Its frame of reference in common usage is nebulous rather than exact, and is akin to 'vicinity,' 'neighborhood' and 'community.' *Cf. Lukens Steel Co.* v. *Perkins* (1939), 70 App DC 354 (107 F2d 627), reversed on other grounds *Perkins, Secretary of Labor,* v. *Lukens Steel Co.* (1940), 310 US 113 (60 S Ct 869, 84 L ed 1108). It is a settlement, a centralized populous area having a general common residential and business activity serving the particular area or district. It does not have to be a separate political entity or corporation. It is a 'locality' or 'area to be served.' It has been analyzed as a 'trading area' distinct from that assigned to 'municipality.' The language in *Application of Howard Savings Institution of Newark*

(1960), 32 NJ 29, on page 46 (159 A2d 113), is appropriately applicable, 'We see no reason why the legislature cannot so differentiate if it chooses to do so or why it may not use the economically artificial municipal boundary as the preliminary measuring rod.' "

The court then went on to say of the location at which defendant bank would operate:

"The area in question, determined by the commissioner to be a village, has its point of focalization at the intersection of Ford and Telegraph roads. Here is located a large shopping center and other commercial establishments serving a district, a community, a collective body of inhabitants, a trading area."

The court continued:

"Plaintiff contends also, that the entire township area in this vicinity is continuous and homogeneous, that there are no physical or geographical dividing lines and hence it cannot be determined to be a separate village under the law. This position is not tenable. The law has already indicated in its definition of a village that economic rather than governmental, or geographical or physical boundaries are the controlling factor. * * * The striking similarity of the intersection of Ford road and Telegraph and the intersection of Beech Daly road and Ford is convincing proof that the commissioner exercised sound judgment in designating each as a 'village.' Each is a separate trading area. Each is a separate cluster of residence and business establishments. Each is at a major intersection. A shopping center is now in operation at the Ford road and Telegraph intersection, and one is in the process of construction at Beech Daly and Ford road. Each has its own potential for growth. Continuity or homogeneity over a large area makes them nonetheless economically separate. If continuity and homogeneity were restrictive factors, as plaintiff contends, then conceivably vast suburban unincorporated areas

with sizeable populations and containing numerous trading and business centers at intersections interspersed throughout, even at considerable and inconvenient distances, would be deprived of banking accommodations. This theory would be in direct contravention of the purpose of the law to safeguard the interests of the public. Public needs would thus be disregarded."

We are not persuaded that, had we been sitting in the position of the trial judge, we would have found otherwise as to the facts as above stated by him. We think the evidence, though conflicting, supports the court's expressed opinion thereon and that its statement of law on the subject is correct. Plaintiff did not, accordingly, establish that the order of the commissioner was unlawful or unreasonable in authorizing defendant's branch.

Plaintiff complains of exclusion of evidence, presented here on separate record. That portion relating to the competitive character of banking operations to be conducted at the 2 township locations, we think admissible insofar as it relates to whether 1 or 2 villages are involved, and we have considered it in reaching our conclusions. On the other hand, no law is cited or discovered prohibiting competitive banking, other than as expressed in the above statutory provision. If that is not breached, and we hold it is not, the competition violates no statutory provision, but is subject, of course, to the statutory condition that the commissioner is satisfied as to the necessity for establishment of the new branch and the prospects for successful operation thereof if established. The testimony regarding the competitive effect of defendant bank's projected branch in the township upon plaintiff's bank and branches in the city of Dearborn was, therefore, properly excluded because no statutory inhibition exists in that respect.

Plaintiff has raised here and briefed the question, in turn discussed in defendants' brief, whether plaintiff has the right under CL 1948, § 487.21 (Stat Ann 1957 Rev § 23.739), to seek chancery review of the commissioner's authorization of defendant bank's branch. The trial court answered in the affirmative and proceeded accordingly. Defendants have not cross-appealed. Hence, we need not discuss this question. But see *St. Clair Shores National Bank* v. *State Banking Commissioner*, 358 Mich 14.

Plaintiff complains of the procedure followed by the commissioner in passing upon, approving and notifying defendant bank in writing of approval of its application for a branch. There is testimony that it conforms with the method generally followed by the banking department in such cases. No lack of compliance with statutory requirements appears. The fact that no record of express findings of fact was made by the commissioner did not render the determination invalid. The statute provides for hearing *de novo* by the circuit court, in chancery, in review of the commissioner's determination. The statute does not require an adversary proceeding before the commissioner, nor the taking of proofs, presence of parties, or making of written finding of facts by him. Under the statute the proceedings become adversary for the first time before the circuit court, and, there the parties are free to adduce proofs touching on whether the determination of the commissioner is unlawful or unreasonable. There a record is made upon which review may be had here. The burden of proving unlawfulness or unreasonableness of the commissioner's action rests on plaintiff. We find no error, requiring reversal, in this connection.

Plaintiff asserts error in exclusion of testimony concerning presence of savings and loan associations in the vicinity as touching on the question of neces-

sity for defendant bank's branch in the area. In speaking of this question in *Moran* v. *State Banking Commissioner,* 322 Mich 230, 239, 240, this Court said:

"While the institutions just above noted, as is also true of building and loan associations, render a certain and limited financial service, it cannot be said that they function in the same field or render a service comparable to that of commercial banks."

There is no error here.

Plaintiff says that not only did the commissioner make no findings of sufficiency of capital and surplus on defendant bank's part nor of necessity for the branch nor of separate village, but that the record would not support such findings. The trial court found, and we agree, that the record does support them. The burden is on plaintiff to prove lack of those elements. The trial court found that plaintiff had failed to establish the same by competent proofs. With that we also agree.

Plaintiff says it was denied due process of law by secret, *ex parte* proceedings before the commissioner on defendant bank's application, had without notice to or opportunity to be heard in opposition by plaintiff. The statute requires no notice. Plaintiff's constitutional rights of due process do not extend to a right to be free from competition. *Public Service Commission of Montana* v. *Great Northern Utilities Co.,* 289 US 130 (53 S Ct 546, 77 L ed 1080). The 14th amendment to the Constitution of the United States does not protect a business against the hazards of competition. At all events, the statute gives plaintiff, at the first adversary stage in the proceedings, before which not even defendant applicant was entitled to a hearing before the commissioner, full notice and an opportunity to be heard and to have the reasonableness and lawfulness of the

commissioner's approval determined in the circuit court in chancery. Due process requirements are thereby met.

Affirmed. Costs to defendants.

CARR, KELLY, BLACK, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.

ADAMS, J., took no part in the decision of this case.