**The COMMERCIAL NATIONAL BANK OF LITTLE ROCK et al., Petitioners-Appellants,**

v.

**The BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent-Appellee.**

**No. 20607.**

United States Court of Appeals, Eighth Circuit.
Nov. 12, 1971.

88

Darrell D. Dover, House, Holmes & Jewell, Little Rock, Ark., for petitioners-appellants.

Kathryn H. Baldwin, Atty., Dept. of Justice, Washington, D. C., L. Patrick Gray, III, Asst. Atty. Gen., Ronald R. Glancz, Atty., Dept. of Justice, Washington, D. C., for respondent-appellee.

C. J. Giroir, Jr., Rose, Barron, Nash, Williamson, Carroll & Clay, Little Rock, Ark., for intervenor.

Before LAY, HEANEY and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

This case presents two principal questions: (1) did the Federal Reserve Board err in determining that the formation of a multi-bank holding company in Arkansas was lawful despite that state's prohibition against branch banking; [1] and (2) did the Board violate the constitutional rights of the fifty-six banks opposed to the formation of the holding company (the protestants) by refusing them a trial-type hearing.

The First Arkansas Bankstock Corporation (FABCO), a one-bank holding company, owned ninety-nine percent of the voting shares of the Worthen Bank and Trust Company (Worthen). It applied to the Federal Reserve Board seeking prior approval to become a bank holding company [2] by acquiring eighty percent or more of the voting shares of the Arkansas First National Bank (AFNB). FABCO and Worthen are located in Little Rock, Arkansas, and AFNB in Hot Springs, Arkansas.

The Comptroller of the Currency recommended approval of the application.[3] At least two of the protestants

1. Subsequent to the Board's decision on FABCO's application, Arkansas legislation became effective which appears to specifically prohibit the creation or expansion of multi-bank holding companies like FABCO. Ark.Act 47 of 1971 (Feb. 5, 1971). By the terms of this legislation and Ark.Acts 326 of 1971 (Mar. 17, 1971) and 460 of 1971 (Mar. 30, 1971),

Act 47 is prospective only and does not apply to FABCO's application in this case. Thus, we see no reason for remanding the case to the Board for reconsideration in light of the legislation.

2. Pursuant to 12 U.S.C. § 1842(a).

3. Pursuant to 12 U.S.C. § 1842(b).

filed responses to the application and requested a trial-type hearing before the Board. The Board denied the request[4] and instead ordered a public oral presentation.[5] Following the oral presentation, FABCO and the protestants submitted additional briefs.

The Board approved FABCO's application. Four of the protestant banks have filed this petition for review of the Federal Reserve Board's order.

The protestants' first contention is that Arkansas's branch banking laws prohibit the formation of multi-bank holding companies. While these statutes do not, by their terms, specifically apply to holding companies,[6] it is argued that a multi-bank holding company such as FABCO is, in effect, engaged in branch banking and should come under Arkansas's branch banking restrictions.

■■ Pursuant to the Bank Holding Company Act of 1956, 12 U.S.C. § 1846,[7] Arkansas is free to prohibit, by specific legislation, the formation of bank holding companies. See, Whitney Nat. Bank in Jefferson Parish v. Bank of New Orleans, 379 U.S. 411, 419 n. 5, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965); Trans-Nebraska Co., 49 Fed.Res.Bull. 633 (1963). However, the legislative his-

tory indicates that Congress did not intend that the Bank Holding Company Act automatically make state branch banking restrictions applicable to bank holding companies. S.Rep. No. 1095, Part I, 84th Cong., 1st Sess. 11 (1955).[8]

■■ Nevertheless, a banking institution cannot avoid state branch banking restrictions merely because it is organized as a holding company, if it is in fact carrying out branch banking. Whitney Nat. Bank in Jefferson Parish v. Bank of New Orleans & Trust Co., 116 U.S.App.D.C. 285, 323 F.2d 290 (1963), rev'd on other grounds, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965); First National Bank in Billings v. First Bank Stock Corp., 306 F.2d 937, 942 (9th Cir. 1962). In *Billings*, the Court found that holding company banking is branch banking when one of the subsidiary banks of the holding company is, " * * * in substance, * * * doing business through the instrumentality of * * * " another subsidiary bank " * * * in the same way as if the institutions were one * * *." First National Bank in Billings v. First Bank Stock Corp., *supra* at 942. There must exist " * * * the unitary type of operation characteristic of branch banking * * *." *Ibid.* at 943.[9]

---

4. Pursuant to 12 C.F.R. § 222.5(a) (1971).

5. Pursuant to 12 C.F.R. § 262.3(f) (3) (1971).

6. See, Ark.Stat.Ann. § 67–303 (1966). All parties concede that branch banking is prohibited in Arkansas but for limited exceptions not relevant here. Nothing has been brought to our attention to suggest that the Arkansas legislature intended its restrictive branch banking laws to apply to holding company banking. In this case, the Arkansas Bank Commissioner, though informed of FABCO's application, made no recommendation.

7. 12 U.S.C. § 1846 provides that:
    "The enactment by the Congress of this chapter [The Bank Holding Company Act of 1956] shall not be construed as preventing any State from exercising such powers and jurisdiction which it now has or may hereafter have

with respect to banks, bank holding companies, and subsidiaries thereof."

8. In accord are a number of cases decided by the Board. Tennessee Financial Corporation, 1969 Fed.Res.Bull. 160; Colorado Bankshares, Inc., 1963 Fed.Res.Bull. 1646; Denver U.S. Bancorporation, Inc., 1963 Fed.Res.Bull. 1518; Farmers & Mechanics Trust Company, 1960 Fed.Res. Bull. 14.

9. In First National Bank in Billings v. First Bank Stock Corp., 306 F.2d 937 (9th Cir. 1962), the Court held that the holding company was not engaged in branch banking prohibited by Montana law and 12 U.S.C. § 36. We think the test used in *Billings* to determine whether a holding company is engaged in branch banking is appropriate in the present case arising under the Bank Holding Company Act, 12 U.S.C. § 1842, *et seq.*

■ In this case, there is substantial evidence in the record to indicate that the relationship between FABCO and its subsidiaries did not represent the kind of unitary operation that was unlawful under Arkansas branch banking laws. Worthen and AFNB had no common directors. They will continue to have separate and independent board of directors, no members of which are common to both boards. Both banks will continue to be managed by local officers. Each bank is a separate corporation with its own capital, surplus, and undivided profit. Each will have its own loan limits based on its own capital and surplus. Worthen will be supervised by the Arkansas Bank Commissioner, AFNB by the Comptroller of the Currency, and FABCO by the Federal Reserve Board. Although Worthen and AFNB are located in the same state, they are a considerable distance apart. Finally, there is nothing to indicate that they will be identified as one institution by the public. These basic facts are undisputed.

■ It is clear that Worthen and AFNB will cooperate in the future. But "* * * it is not enough * * * to show that common control, through stock ownership by [a bank] which participates actively in the management of its subsidiaries, produces cooperation * * * between the subsidiaries. This is a usual, although not necessary, result of common ownership and control." First National Bank in Billings v. First Bank Stock Corp., *supra* at 942.

The protestants suggest that this situation is not comparable to that in *Billings*, but is rather controlled by *Whitney*, where the Fifth Circuit found a holding company organization to be engaged in branch banking. We do not think *Whitney* is comparable. In *Whitney*, a "parent" bank, in an intricate financial arrangement, established *both* a holding company and a new bank. The holding company's only subsidiaries were to be the parent bank and the new bank. It was clear from the statements of man-

agement and the Comptroller of the Currency that the intention was to run the two banks as a unitary operation under the direction of the parent bank. Thus, the transaction was a subterfuge for the establishment of a branch office in the same market area as the present bank.

In the present case, FABCO is acquiring AFNB, an old, established bank with its own capital structure, and there is substantial evidence to indicate the independence of AFNB and Worthen.

■ We recognize that there is some validity to the protestants' argument that this case is not fully controlled by *Billings*. *Billings* involved a large holding company, with numerous subsidiaries, which purchased the stock of the subsidiaries with its own capital for investment purposes. FABCO, on the other hand, has only two subsidiaries and acquired AFNB not only for investment purposes but to achieve a more efficient coordination of the available resources held by the subsidiaries. We do not feel that these differences are sufficient in and of themselves to require that we reach a decision contrary to that reached in *Billings* here. The decisive test is whether a unitary operation will exist. The Federal Reserve Board has determined that it will not. Its expert conclusions on this matter are entitled to great weight. As these conclusions are supported by substantial evidence, we will not reverse the Board even though we might reach a contrary conclusion if we were making the initial decision on the matter. Northwest Bancorporation v. Board of Governors, etc., 303 F.2d 832, 841 (8th Cir. 1962).

The protestants also contend that the hearing before the Board was constitutionally deficient, in that there was no opportunity to cross-examine witnesses, and that they were denied access to parts of the record designated "confidential" by the Board.

■ This Court and others have held that the Board is not constitution-

ally required to hold trial-type hearings on applications under the Bank Holding Company Act, except when provided for by the statute itself. Kirsch v. Board of Governors of Federal Reserve System, 353 F.2d 353, 356 (6th Cir. 1965); First Wisconsin Bankshares Corp. v. Board of Governors, 325 F.2d 946, 960 (7th Cir. 1963); Northwest Bancorporation v. Board of Governors, etc., *supra* at 842–844. The protestants have not indicated any dispute in the basic facts that would have required cross-examination. See, Goldberg v. Kelley, 397 U.S. 254, 269–270, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and the cases cited therein. They do not specifically suggest any way in which the record fails to accurately portray FABCO's intentions. In essence, they argue that a holding company, such as FABCO, inevitably engages in branch banking. Thus, their quarrel is basically with the conclusions of the Board.

In addition, the protestants have failed to point out how the confidential material related to their principal contention concerning branch banking. The material consisted of an exhibit admitted at the hearing, and FABCO's responses to certain questions in the application to the Board. Thus, the subject matter of the confidential material was known to the protestants. This confidential material constituted only a small portion of the record on which the Board relied. Some of the material concerned sensitive financial information submitted in confidence. Disclosure of such material could destroy public trust in a bank, given the delicate nature of the institution. See, Sterling National Bank of Davie v. Camp, 431 F.2d 514 (5th Cir. 1970), *cert. denied,* 401 U.S. 925, 91 S.Ct. 879, 27 L.Ed.2d 829 (1971); Webster Groves Trust Company v. Saxon, 370 F.2d 381, 385, n. 1 (8th Cir. 1966); Bridgeport Fed. Sav. & L. Ass'n v. Federal Home Loan Bank Bd., 307 F.2d 580 (3rd Cir. 1962), *cert. denied,* 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499 (1963); 5 U.S.

C. § 552(b) (4); K. Davis Discretionary Justice (1969).

In light of these considerations, we do not feel that the Board erred in not granting the protestants a trial-type hearing. The order of the Federal Reserve Board is affirmed.